1   David M. Birka-White (State Bar No. 85721)
    dbw@birka-white.com
2   Mindy M. Wong (State Bar No. 267820)
    mwong@birka-white.com
3   BIRKA-WHITE LAW OFFICES
    178 E. Prospect Avenue
4   Danville, CA  94526
    Telephone:  (925) 362-9999
5   Facsimile:  (925) 362-9970

6   N. Scott Carpenter (*Pro Hac Vice*)
    scarpenter@cstriallaw.com
7   Rebecca Bell-Stanton (*Pro Hac Vice*)
    rstanton@cstriallaw.com
8   Carpenter & Schumacher, P.C.
    2701 Dallas Parkway, Suite 570
9   Plano, TX 75093
    Telephone: (972) 403-1133
10  Facsimile:  (972) 403-0311

11  Attorneys for Plaintiffs
    JAMES BODLEY and KYLE MATSON
12

13                    **UNITED STATES DISTRICT COURT**

14              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                        **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 16  JAMES BODLEY and KYLE MATSON, on behalf of themselves and all others similarly situated, | Case No. 3:17-cv-05436-JST |
| 17 | *The Honorable Jon S. Tigar* |
| 18                    Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER THIS CASE UNDER FIRST-TO-FILE RULE OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)** |
| 19  v. | |
| 20  WHIRLPOOL CORPORATION, and DOES 1-10, inclusive, | |
| 21 | |
| 22                    Defendants. | Date:    February 8, 2018 |
| 23 | Time:   2:00 p.m. |
| 24 | Ctrm.:   9 |
| 25 | Action Filed:   September 19, 2017 |

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... i

I.       INTRODUCTION ................................................................................................... 1

II.      STATEMENT OF ISSUES ..................................................................................... 3

III.     THE MOTION TO TRANSFER OR STAY THE CASE SHOULD BE DENIED ...... 4

         A.    The First-To-File Rule Does Not Apply. ....................................................... 4

         B.    This Court Should Decline to Transfer or Stay This Case ............................. 5

IV.      DEFENDANT'S MOTION TO DISMISS THE FAC SHOULD BE DENIED............. 7

         A.    Legal Standards Governing This Motion ....................................................... 7

         B.    Plaintiff Bodley States Plausible Claims Under UCL and CLRA .................. 7

               1.    Whirlpool Had Knowledge of the Defect and a Duty to Disclose. ............... 7

               2.    Pre-Sale Knowledge of the Defect. .................................................... 8

         C.    Whirlpool's Warranty Limitations Are Unenforceable ............................... 11

         D.    Plaintiff Bodley Has Adequately Plead Fraudulent Concealment .............. 12

               1.    The Statements Challenged by Whirlpool are not Puffery......................... 13

               2.    Plaintiffs Have Adequately Alleged Active Concealment. ........................ 14

               3.    Plaintiffs Allege Indirect Reliance Sufficiently. ................................. 15

         E.    Plaintiffs State a Cause of Action for Breach of Express Warranty ............ 16

               1.    The Defect Is Covered By the Express Warranty. ............................. 16

               2.    Plaintiffs Have Stated an Express-Warranty Claim under  the Song-Beverly Act. .............................................................................. 22

               3.    Plaintiffs Have Stated an Express-Warranty Claim under the MMWA. .... 22

         F.    Plaintiffs Have Adequately Alleged Breach of Implied Warranty ............. 22

               1.    Plaintiffs' Implied Warranty Claims Are Not Time-Barred. .................... 22

               2.    Plaintiffs' Implied Warranty Claims Do Not Fail for Lack of Privity. ....... 24

               3.    Matson's Implied Warranty Claim Does Not Fail. .............................. 24

               4.    Plaintiffs Adequately Alleged that the Dishwashers Were  Unfit for their Ordinary Purpose. .......................................................... 24

Birks-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

i                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

V.    CONCLUSION.................................................................................................. 25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1

# TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3

*Albright v. Oliver*
4     510 U.S. 266 (1994) .................................................................................................. 7

5 *Apodaca v. Whirlpool Corp*.
    2013 WL 6477821 (C.D. Cal. 2013) ....................................................................... 9
6

*Asghari v. Volkswagen Group of America, Inc.*
7     42 F.Supp.3d 1306 (C.D. Cal. 2013).................................................................... 10

8 *Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .................................................................................................. 7
9

*Avedisian v. Mercedes–Benz USA, LLC*
10     2013 WL 2285237 (C.D. Cal. 2013) ............................................................. 8, 9, 10

11 *Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................................. 7
12

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*.
13     622 F. 3d 996 (9th Cir. 2010) ............................................................................... 11

14 *Cadenasso v. Metro. Life Ins. Co*.
    2014 WL 1510853 (N.D. Cal. Apr. 15, 2014, No. 13-CV-05491-JST) ........................... 5, 6
15

*Cirulli v. Hyundai Motor Co*.
16     2009 WL 5788762 (C.D. Cal., June 12, 2009, No. SACV 08-0854 AG MLGX) ............... 8

17 *Daniel v. Ford Motor Co,*
    2016 WL 2899026 (E.D. Cal. May 18, 2016, No. 2:11-02890 WBS EFB) .................. 8, 17
18

*Daniel v. Ford Motor Company*
19     806 F.3d 1217 (2015) ....................................................................................... 23, 24

20 *Digby Adler Group, LLC v. Mercedes-Benz U.S.A., LLC*
    2015 WL 5138080 (N.D. Cal., Sept. 1, 2015, No. 14-CV-02349-TEH) ..................... 25
21

*Ehrlich v. BMW of N. Am., LLC*
22     801 F. Supp. 2d 908 (C.D. Cal. 2010)........................................................ 8, 15, 23, 24

23 *Erickson v. Pardus*
    551 U.S. 89 (2007) .................................................................................................... 7
24

*Falco v. Nissan North America Inc.*
25     2013 WL 5575065 (C.D. Cal., Oct. 10, 2013, No. CV 13-00686 DDP MANX) ............... 24

26 *Falk v. General Motors Corp.*
    496 F.Supp.2d 1088 (N.D. Cal. 2007) ..................................................... 8, 9, 10, 15
27

*Gulf Oil Corp. v. Gilbert*
28     330 U.S. 501 (1947) .................................................................................................. 2

i                   Case No. 3:17-cv-05436-JST

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

*Herremans v. BMW of North America, LLC*
   2014 WL 5017843 (C.D. Cal., Oct. 3, 2014, No. CV 14-02363 MMM PJWX) ............... 11

*In Re Saturn L-Series Timing Chain Product Liability*
   2008 WL 4866604 (U.S. Dist. Neb. 2008).................................................................. 21, 22

*In re Toyota Motor Corp.*
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................................ 15

*Jou v. Kimberly-Clark Corporation*
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013, No. C-13-03075 JSC)................................ 13

*Keegan v. American Honda Motor Company*, Inc.
   284 F.R.D. 504 (C.D. Cal. 2012) ..................................................................................... 24

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*
   342 U.S. 180, 183-84 (1952)............................................................................................. 5

*Kilgore v. KeyBank, Nat. Ass'n*
   673 F. 3d 947 (9th Cir. 2012) ......................................................................................... 11

*Koulajian v. Trek Bicycle Corp.*
   1992 WL 28884 (S.D. NY 1992) ............................................................................... 21, 22

*Limandri v. Judkins*
   52 Cal. App. 4th 326 (1997) ........................................................................................... 14

*Lockyer v. Mirant Corp.*
   398 F. 3d 1098 (9th Cir. 2005) .......................................................................................... 6

*Lombard Corporation v. Quality Aluminun Products Co.*
   261 F.2d. 336 (6th Cir. 1958)........................................................................................... 20

*MacDonald v. Ford Motor Co.*
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ....................................................................... 12, 23

*Marsikian v. Mercedes Benz USA, LLC*
   2009 WL 8379784 (C.D. Cal. 2009)........................................................................... 10, 15

*Michael v. Honest Company, Inc.*
   2016 WL 8902574 (C.D. Cal., Dec. 6, 2016, No. LACV1507059JAKAGRX) ................ 24

*Mui Ho v. Toyota Motor Corp.*
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ............................................................................... 8

*Musgrave v. ICC/Marie Callendar's Gourmet Products Division*
   2015 WL 510919 (N.D. Cal. Feb. 5, 2015, , No. 14-CV-02006-JST) .............................. 19

*Myers v. BMW of North America, LLC*
   2016 WL 5897740 (N.D. Cal., Oct. 11, 2016, No. 16-CV-00412-WHO).......................... 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*
   2012 WL 3277222,  (N.D. Cal. Aug. 9, 2012, No. C-11-1892 EMC).............................. 6

       Case No. 3:17-cv-05436-JST

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

*Pacesetter Systems, Inc. v. Medtronic, Inc.*
    678 F.2d 93 (9th Cir. 1982) ........................................................................................ 4, 5

*Parenteau v. Gen. Motors*, LLC
    2015 WL 1020499 (C.D. Cal., Mar. 5, 2015, No. CV 14-04961-RGK MANX) .............. 11

*Rahman v. Mott's LLP*
    2014 WL 325241 (N.D. Cal. Jan. 29, 2014, No. CV 13-3482 SI) ..................................... 13

*Roberts v. Electrolux Home Products, Inc.*
    2013 WL 7753579 (C.D. Cal., Mar. 4, 2013, No. CV 12-1644 CAS VBKX) .................. 24

*Sharma v. BMW of N. Am. LLC*
    2016 WL 4395470 (N.D. Cal. Aug. 18, 2016, No. 13-CV-02274-MMC) ........................... 9

*Troup v. Toyota Motor Corp.*
    545 F.App'x 668 (9th Cir. 2013) ..................................................................................... 21

*United States v. Ninety–Five Barrels More or Less of Alleged Apple Cider Vinegar*
    265 U.S. 438 (1924) ........................................................................................................ 13

*Velasco v. Chrysler Group LLC*
    2014 WL 4187796 (C.D. Cal., Aug. 22, 2014, No. CV 13-08080 DDP VBKX) ............... 12

*Williams v. Gerber Products Co.*
    552 F.3d 934 (9th Cir. 2008) ....................................................................................... 7, 13

*Wilson v. Hewlett-Packard Co.*
    668 F.3d 1136 (9th Cir. 2012) ........................................................................................ 10

*Zaborowski v. MHN Government Services, Inc*.
    936 F. Supp. 2d 1145 (N.D. Cal. 2013) .......................................................................... 12

## <u>State Cases</u>

*America Online, Inc. v. Superior Court*
    90 Cal. App. 4th 1 (2001) ................................................................................................. 5

*American Star Insurance Co. v. Insurance Co of the West*
    232 Cal.App.3d 1320 (1991) ........................................................................................... 18

*Armendariz v. Found. Health Psychcare Svcs., Inc.*
    24 Cal. 4th 83 (2010) ................................................................................................ 11, 12

*Barker v. Lull Engineering Company, Inc.*
    20 Cal.3d 413 (1978) ......................................................................................... 19, 20, 21

*Bell v. Industrial Vangas, Inc.*
    30 Cal. 3d 268 (1981) ....................................................................................................... 5

*Cardinal Health v. Tyco Electronics Corp.*
    169 Cal.App.4th 116 (2008) ............................................................................................ 23

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

iii

Case No. 3:17-cv-05436-JST

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

*Cotran v. Rollins Hudig Hall Intern., Inc.*
   17 Cal.4th 93 (1998) ........................................................................................... 19

*Daugherty v. American Honda Motor Co.* Inc.
   144 Cal.App.4th 824 (2006), *as modified* (Nov. 8, 2006)...................... 11, 14, 21

*Geernaert v. Mitchell*
   31 Cal.App.4th 601 (1995)................................................................................. 15

*Gilbert Financial Corp. v. Steelform Contracting Co.*
   82 Cal. App. 3d 65 (1978)................................................................................. 24

*Grinnell v. Charles Pfizer & Co.*
   274 Cal.App.2d 424 (1969)........................................................................... 15, 16

*In re Marriage of Cornejo*
   13 Cal.4th 381 (1996)........................................................................................ 19

*Isip v. Mercedes-Benz USA, LLC*
   155 Cal.App.4th 19 (2007)................................................................................. 25

*McCabe v. American Honda Motor Co.*
   100 Cal.App.4th 1111 (2002)............................................................................. 21

*Mexia v. Rinker Boat Co., Inc.*
   174 Cal. App. 4th 1297 (2009)...................................................................... 22, 23

*Neal v. State Farm Ins. Cos.*
   188 Cal.App.2d 690 (1961)................................................................................ 17

*Santisas v Goodin*
   17 Cal.4th 599 (1998)........................................................................................ 18

*Thrifty-Tel, Inc. v. Bezenek*
   46 Cal. App. 4th 1559 (1996)........................................................................ 15, 16

*Toole v. Richardson–Merrell Inc.*
   251 Cal.App.2d 689 (1967)............................................................................ 15, 16

*Williams v. Superior Court*
   3 Cal. 5th 531 (2017)........................................................................................... 5

### Federal Statutes

15 U.S.C. § 2302(a).................................................................................................. 17

15 U.S.C. § 2302(a)(5) ............................................................................................. 17

Fed. Rule Civ. P. Rule 9(b) ................................................................................. 8, 12

Fed. Rule Civ. P. Rule 12(b)(6) ................................................................................ 7

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1

<b><u>State Statutes</u></b>

Civil Code § 1654 ...................................................................................................................... 17

Civil Code §1644 ................................................................................................................ 17, 18

Civil Code §1792 ...................................................................................................................... 24

Civil Code §1793.1(a) ............................................................................................................. 17

Commercial Code § 2725(1) .................................................................................................... 22

Commercial Code §2725(2) ............................................................................................... 22, 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

# I.      INTRODUCTION

Plaintiffs James Bodley ("Bodley") and Kyle Matson ("Matson") (collectively, "Plaintiffs") submit this opposition to Defendant Whirlpool Corporation ("Whirlpool")'s Motion to Dismiss, Stay or Transfer This Case Under the First-to-File Rule or, alternatively, to Dismiss Plaintiffs' Complaint Under Rule 12(b)(6) (the "Motion"). For the reasons stated below, the Motion should be denied.

This case is about defective dishwashers manufactured by Whirlpool under the brand name KitchenAid. The upper rack assembly collapses when the plastic wheel assembly breaks, creating a safety hazard as the contents, usually glassware, are shattered and tossed about. *FAC*, ¶¶ 4, 22, 27, 36, 53 and 91. Whirlpool also refuses to honor the terms of its warranty or pay for any parts or labor for the defect and charges consumers the full price of the replacement part. *FAC*, ¶ 5.

***Motion to Transfer.*** Whirlpool correctly states that *Bodley v. Whirlpool Corporation* ("*Bodley*") and *Burch v. Whirlpool*, No. 1:17-cv-18 (PLM) (W.D. Mich. Sept. 28, 2017) ("*Burch*") involve defective dishwashers manufactured by Whirlpool. That is where the similarity ends. *Burch* has a single remaining cause of action (breach of implied warranty), will apply Virginia common law, and involves no consumer-based claims.[1] By contrast, the instant case alleges numerous causes of action unique to California: UCL, CLRA, and breach of express and implied warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). Plaintiffs also make claims for breach of express and implied warranty under the Magnuson-Moss Warranty Act and fraudulent concealment. Thus, the causes of action in the two cases bear essentially no similarity. Because of this disparity, *Burch* cannot provide adequate relief to the putative class and there is no principled reason to stay the case because the claims and the class definition are substantially dissimilar.

"There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S.

---

[1] In *Burch*, the court found that "Michigan has only a nominal interest in the litigation - its only connection besides being the forum is that Whirlpool is based in the state. Therefore, the Court finds that Michigan's interest are minimal." *Burch*, Opinion, ECF No. 22, at 5-6.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

1                       Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

501, 509 (1947). This forum is knowledgeable about the complex state laws governing Plaintiffs' case, and it would be imprudent to transfer it to Michigan. The difficulty and complexity of substantive law and conflicts of law governing this action, especially in a class action setting, counsel strongly for the retention of this case in an active status.

**CLRA and UCL Claims.** In its central challenges to Plaintiffs' CLRA and UCL causes of action, Whirlpool claims that it had no "duty to disclose" because Plaintiffs' allegations do not adequately demonstrate that Whirlpool was aware of the defect at the time of sale. Whirlpool further asserts that Plaintiffs' allegations that the defective racks pose an "unreasonable safety risk" are inadequate because the complaint is "devoid of any allegations of personal injury."

Plaintiffs assert that they have adequately pleaded that Whirlpool had knowledge of the defect since at least 2011 through consumer complaints, dealers, consumer complaints on websites, repair orders and from internal sources such as their warranty and engineering departments and the sheer volume of replacement parts which Whirlpool manufactured, sold and profited from. *FAC*, ¶¶ 6, 26. Plaintiffs further allege that Whirlpool had exclusive knowledge of the defect and substantial pre-sale knowledge. *FAC*, ¶¶ 38, 144. Plaintiffs further assert they need not plead that they or other class members have suffered personal injury to state a viable claim. Plaintiffs have alleged that despite this knowledge, Defendant conveyed to consumers misleading representations about the high quality of the dishwashers via a network of "partners" (Whirlpool's word) who were provided with written marketing materials for the express purpose that these "partners" would convey it to consumers. *FAC*, ¶¶ 38, 49, 68, 70, 77, 85, 131, 142.

**Express Warranty Claims.** A proper assessment of the Motion requires a clear understanding of what is at issue in this litigation. This case is not about whether the wheel assembly on the upper rack of Whirlpool's "premium" dishwasher is defective. For the purposes of this motion, Whirlpool has admitted and acknowledged that systemic class-wide defect. Instead, the focus is upon Whirlpool's conduct in addressing the defect. Notwithstanding Whirlpool's unambiguous promise in the express warranty to "pay to correct defects in materials," it now contends that the scope of the warranty does not extend to the material defects in the wheel assembly because it is a "design defect," a defect uniquely caused by Whirlpool's negligent

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

2                                      Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1  selection of materials - likely to save money - for which Whirlpool is immunized from liability.

2  "Design defect" is a complex technical and legal term and was never *mentioned* or *defined* in the

3  warranty. Furthermore, although Whirlpool expressly promises to warranty the "nylon dish racks"

4  for five years. Whirlpool contends that the wheel assembly, a crucial if not indispensable element of

5  the rack, is *not* part of the rack – a position that re-defines duplicity.

6      ***Implied Warranty Claims.*** Plaintiffs assert that an implied warranty claim under Song-

7  Beverly based on a latent defect does not accrue until plaintiff discovers the facts giving rise to the

8  claim. Plaintiffs' complaint plausibly states claims under CLRA, UCL, express warranty, implied

9  warranty and fraudulent concealment. Whirlpool is fairly on notice of Plaintiffs' claims and the

10  grounds upon which they are based; indeed Whirlpool admits the defect. Plaintiffs urge this court to

11  construe the pleadings in a favorable light and resolve all doubt in Plaintiffs' favor.

12  **II.**    **STATEMENT OF ISSUES**

13      ***Motion to Transfer***: Whether a transfer or stay is warranted under the first-to-file doctrine.

14      ***Motion to Dismiss***. Whether the FAC plausibly alleges:

15          (1) Whirlpool had knowledge of the alleged upper rack defect at the time Plaintiffs

16              purchased their dishwashers;

17          (2) the defect poses an unreasonable safety hazard;

18          (3) Whirlpool's active concealment of the alleged defect;

19          (4) the who, what, when, and how requirements of Rule 9(b) as applied to fraudulent

20              concealment;

21          (5) the inadequacy of the express warranty to exclude design defects or state that the

22              selection of improper materials is excluded from warranty coverage;

23          (6) the inability of ordinary consumers to readily understand the express warranty as

24              excluding design defects or use of improper materials;

25          (7) timely implied warranty claims based upon discovery of a latent defect and

26              application of the future performance exception; and

27          (8) satisfaction of implied warranty privity requirements, if any.

28

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

3                         Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    **III.      THE MOTION TO TRANSFER OR STAY THE CASE SHOULD BE DENIED**

2         Although Defendant dismissively declares this suit to be a "copycat" case to be discarded by

3    the Court, the instant matter is far from duplicative of *Burch*.   Indeed, *Burch* has one remaining

4    cause of action - breach for implied warranty - which Whirlpool has yet to challenge. The instant

5    case has numerous California based claims: CLRA, UCL, express and implied warranty under

6    Song-Beverly, as well as claims under the Federal Magnuson-Moss Warranty Act. Transferring this

7    matter to a forum not yet familiar with these differing claims, and dispositive rulings on others,

8    significantly undermines protections otherwise available to the Plaintiffs and putative class.

9    Whirlpool's default request for a stay in lieu of transfer further ignores these distinctions.

10        **A.      The First-To-File Rule Does Not Apply.**

11        Whirlpool argues for six pages that the "first-to-file" doctrine forecloses active progression of

12   the instant suit in this forum. Of course, if the first-to-file rule does not apply, continued inquiry into

13   the policy reasons for transfer or stay is unnecessary. Indeed, the first-to-file rule is "not a rigid or inflexible

14   rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial

15   administration." *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

16        Although correctly informing the court as to filing chronology, Whirlpool then requests this

17   Court not delve too deeply into comparing the pleadings.  However, Whirlpool's facial categorization of

18   the issues notwithstanding, there is little doubt that the instant matter is far from duplicitous of the *Burch*

19   matter. Subsequent to procedural pleading challenges examined under Virginia substantive law, the

20   *Burch* matter involves a single cause of action (breach of implied warranty) to be analyzed under

21   Virginia law. By contrast, the instant case alleges numerous causes of action unique to California:

22   UCL, CLRA, and breach of express and implied warranty under the Song-Beverly Consumer

23   Warranty Act ("Song-Beverly Act"). Plaintiffs in the instant matter also make claims for breach of

24   express and implied warranty under the Magnuson-Moss Warranty Act and fraudulent concealment.

25   Comparing the existing pleadings, the causes of action in the two cases bear little similarity,

26   preventing the *Burch* litigation from providing "adequate relief to the putative class."

27        Moreover, the class definitions are different. The *Burch* class consists of all owners of

28   dishwashers manufactured by Whirlpool under various brands. Plaintiffs' class consists only of all

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

4                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    owners of KitchenAid brand dishwashers.  Both cases are newly filed.  There is no principled reason to

2    stay the *Bodley* action behind *Burch*.  Both should be prosecuted separately.  Moreover, there have been

3    substantive rulings in *Burch* which should not be applied to Plaintiffs' claims.  Accordingly, the first-to-

4    file rule is inapplicable to either transfer or stay the proceedings because the parties and issues are not

5    substantially similar and Plaintiffs would be prejudiced

6                    **B.      This Court Should Decline to Transfer or Stay This Case**

7            "A motion for transfer lies within the broad discretion of the district court, and must be

8    determined on an individualized basis."  *Cadenasso v. Metro. Life Ins. Co*., 2014 WL 1510853, at

9    *3 (N.D. Cal. Apr. 15, 2014).  "The most basic aspect of the first-to-file rule is that it is

10   discretionary;" it necessarily leaves "an ample degree of discretion, appropriate for disciplined and

11   experienced judges ... to the lower courts."  *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*

12   342 U.S. 180, 183-84 (1952); *see also Pacesetter, supra,* 678 F.2d at 95.

13   (9th Cir. 1982) (this "first to file" rule is not a rigid or inflexible rule to be mechanically applied).

14           Particularly relevant to this discretionary analysis is California's strong public policy to

15   provide a forum for consumers of defective products.[2]  "California public policy favors the effective

16   vindication of consumer protections."  *Williams v. Superior Court*, 3 Cal. 5th 531, 548 (2017).  "The

17   public policy goals underlying product liability doctrine should not be subverted." *Bell v. Industrial*

18   *Vangas, Inc*., 30 Cal. 3d 268, 279 (1981).  Such public policy goals are best served by retaining

19   jurisdiction in this district.  "This conclusion is reinforced by a statutory comparison of California

20   and Virginia consumer protection laws, which reveals Virginia's law provides significantly less

21   consumer protection to its citizens than California law provides for our own."  *America Online, Inc.*

22   *v. Superior Court*, 90 Cal. App. 4th 1, 15 (2001).

23           Further, this Court is more familiar with the governing California law, which fairly dictates

24   the disposition of this motion, and the "interests of justice" warrant a decision not to transfer.

25   _____

26   [2] Interestingly, in *Burch,* Whirlpool insisted that the Michigan district court consider the strong
     interest of Virginia in light of the residency of the Plaintiff, the location of purchase, and pursuit of
27   remedy prior to litigation in that forum – the district court complied, noting the minimal interests of
     Michigan significantly paled to the interests of Virginia. *Burch,* Slip Op. 6 (DF Motion, EX 3).

28

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

5                Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

A reasonable assessment of all relevant factors militates against transferring this case to Michigan: (1) the relevant agreements and documents were generated in California; (2) California is most familiar with the governing law; (3) Plaintiffs' choice of forum is California; (4) Plaintiffs reside in California and Whirlpool has a vast multitude of contacts with California as KitchenAid brand dishwashers and other Whirlpool products are sold at hundreds of retail locations throughout the state; moreover Whirlpool is a registered foreign corporation in California; (5) the acts and omissions giving rise to this lawsuit occurred in California; and (6) the prospects for Plaintiffs of litigating in Michigan are exorbitantly costly and unduly burdensome. *See*, *generally*, *Declaration of James Bodley*, *Declaration of Kyle Matson*, and *Declaration of Mindy Wong* ("*Wong Decl.*") submitted herewith.[3] Whirlpool has not met its burden to justify transfer. *See*, *Cadenasso, supra*, 2014 WL 1510853 at *3.

Whirlpool's alternative request in the form of a stay should likewise be denied. In determining whether a stay is appropriate, courts weigh various competing interests, including: "possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F. 3d 1098, 1110 (9th Cir. 2005). Ultimately, a "trial court's discretion tempers the preference for the first-filed suit when such preference should yield to the forum in which all interests are best served. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, 2012 WL 3277222, at *4 (N.D. Cal. Aug. 9, 2012) (citations omitted).

The operative facts occurred here in Plaintiffs' chosen forum and the subject matter is ineluctably connected to California given the overriding state public policy considerations regarding product liability and consumer protection law. Virginia's contradictory law dramatically reduces protections to the putative class. The *Burch* court has ruled that "Michigan's interests are minimal." This Court can properly deny Defendants' motion as to transfer or stay in toto.

---

[3] Whirlpool sells its products, including its KitchenAid brand products through various outlets like Home Depot, Lowes, Sears, and Ferguson. There are hundreds of retail locations in California that sell KitchenAid appliances. *Wong Decl.*, ¶¶ 2-14.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

6                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    **IV.    DEFENDANT'S MOTION TO DISMISS THE FAC SHOULD BE DENIED**

2         **A.    Legal Standards Governing This Motion**

3         The Supreme Court has stated the standards for assessing motions to dismiss under Federal

4    Rule of Civil Procedure 12(b)(6): To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

5    allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

6    *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

7    factual content that allows the court to draw the reasonable inference that the defendant is liable for

8    the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9         "Specific facts are not necessary; the [complaint] need only give the defendant[s] fair notice

10   of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93

11   (2007) (per curiam) (citations and internal quotation marks omitted) (brackets added); *see Twombly*,

12   550 U.S. at 555. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true *all*

13   of the factual allegations contained in the complaint."  *Erickson*, 551 U.S. at 93–94 (emphasis

14   added.); *Albright v. Oliver*, 510 U.S. 266, 268 (1994). Under these standards, it is a "rare situation in

15   which granting a motion to dismiss is appropriate." *Williams v. Gerber Products Co*., 552 F.3d 934,

16   939 (9th Cir. 2008).

17        **B.    Plaintiff Bodley States Plausible Claims Under UCL and CLRA**

18        Plaintiffs have asserted claims based upon: (1) omissions and representations concerning the

19   quality and characteristics of the KitchenAid dishwasher; (2) omissions and representations

20   concerning the unreasonable safety risk posed by the defective upper rack; and (3) inclusion of

21   unconscionable provisions in its warranty documents. *FAC*, ¶¶ 38, 45-50.  Plaintiffs also contend

22   that they have plausibly alleged that: (1) Whirlpool had knowledge of the alleged upper rack defect

23   at the time Plaintiffs purchased their KitchenAid dishwashers; (2) the defect poses an unreasonable

24   safety hazard; and (3) Whirlpool actively concealed the alleged defect.

25             **1.    Whirlpool Had Knowledge of the Defect and a Duty to Disclose.**

26        Whirlpool contends that it had no duty to disclose the upper rack defect and that Plaintiff

27   Bodley did not adequately allege pre-sale knowledge. *Motion* at 10-14. Whirlpool's contention is

28   incorrect and unsubstantiated. Plaintiffs allege Defendant had a duty to disclose the dangerous upper

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

7                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

rack defect on three separate grounds: (1) Whirlpool had exclusive knowledge; (2) Whirlpool actively concealed a material fact from the putative class; and (3) Whirlpool made partial representations but also suppressed some material facts. *See, Falk v. General Motors Corp*., 496 F.Supp.2d 1088, 1095 (N.D. Cal. 2007). "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only a… limited publicly available information about the defect." *Daniel v. Ford Motor Co*., No. 2:11-02890 WBS EFB, 2016 WL 2899026, at *4 (E.D. Cal. May 18, 2016).

Courts routinely find such allegations of exclusive knowledge sufficient under Rule 9(b). *See*, *Avedisian v. Mercedes–Benz USA, LLC*, 2013 WL 2285237, *7 (C.D. Cal. 2013); *Mui Ho v. Toyota Motor Corp*., 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013); *Falk*, 496 F. Supp. 2d at 1096-97; *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908 (C.D. Cal. 2010).

### 2. Pre-Sale Knowledge of the Defect.

Plaintiff Bodley alleges that since at least 2011, Whirlpool knew about the defective upper rack assembly through numerous sources - failures being relayed to Defendant through its distributors, retailers, and builders, early consumer complaints on websites and Internet forums, including complaints posted on www.kitchenaid.com, replacement part orders, and other internal sources of information about the defect. *FAC*, ¶¶ 32, 82. Parenthetically, Whirlpool sold the repair parts. Defendant's engineers conducted tests and analysis regarding the failures, concluding that the upper rack assembly was defective and unfit for its intended purpose. *FAC,* ¶¶ 33-35. Defendant determined the original design was inadequate and developed a new design but continued to sell the defective part to members of the Class. *FAC,* ¶¶34-35. Plaintiffs have also alleged that Defendant was aware of the defect based upon consumer complaints on its own website and third-party websites as set forth in the FAC and in Exhibit D thereto. *FAC,* ¶¶51, 56. Whirlpool was aware of the defect due to the large volume of orders for failed parts. *FAC,* ¶56.[4]

---

[4] *See, e.g.*, *Cirulli v. Hyundai Motor Co*., 2009 WL 5788762, *4 (C.D. Cal., June 12, 2009 ) (finding adequate allegation of knowledge based in part on allegation that "[s]ince 1999, [Defendant] has ... (footnote continued)

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

8                                        Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

It is reasonable to infer that Whirlpool had knowledge of these complaints submitted by consumers. *FAC,* ¶¶ 51, 51 and Exhibit D.  In conjunction with Plaintiff Bodley's other allegations that Whirlpool knew of the defect through its retailers, distributors, builders, and other internal sources of aggregate information, these substantiate that Whirlpool had pre-sale knowledge and a duty to disclose. *FAC,* ¶¶ 67-73. Plaintiff Bodley has adequately pleaded Whirlpool's exclusive knowledge of the defect.

### a.  Safety-Based Defect.

Whirlpool never asserts that they were unaware of the defect. Rather it asserts breaking dishes "is an inherent risk of using any dishwasher." Plaintiffs assert that there are real distinctions between a homeowner dropping a glass and the entire dish rack collapsing – filled with glassware. Whirlpool asserts that the obvious safety risks that a falling dish rack presents is pure "conjecture" and that it therefore has no duty to disclose. *See* Motion at 12-13.  Here, Plaintiffs allege Defendant had a duty to disclose the unreasonable safety risk caused by the failure of the upper rack assembly. *FAC,* ¶¶ 36-39, 91, 120. A duty to disclose arises if the defect poses an unreasonable safety risk. *Sharma v. BMW of N. Am. LLC*, No. 13-CV-02274-MMC, 2016 WL 4395470 at *4-5 (N.D. Cal. Aug. 18, 2016). "In order to state a claim for failing to disclose a safety defect, Plaintiff [ ] must allege (1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and [ (4) ] that the manufacturer knew of the defect at the time a sale was made." *Apodaca v. Whirlpool Corp*., 2013 WL 6477821, *9 (C.D. Cal. 2013). Plaintiffs have alleged that the upper rack assembly is defective, that the defect caused the unreasonable safety risk – which is not speculative, and that Whirlpool

---

constantly tracked the National Highway Traffic Safety Administration ... database to track reports of defective Sonata sub- frames. From this source, [Defendant] knew that its 1999–2004 Sonatas were experiencing unusually high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway accidents"); *Falk, supra*, 496 F.Supp.2d 1088, 1096 (finding sufficient the allegation that defendant had exclusive knowledge of defect based on factors including "only GM had access to the aggregate data from  its dealers, only GM had access to pre-release testing data, and only GM had access to the numerous complaints from its customers") (internal brackets and quotation  marks  omitted); *see also Avedisian v. Mercedes–Benz USA, LLC,  supra*, 2013 WL 2285237, *7; *Myers v. BMW of North America, LLC*, 2016 WL 5897740, *4 (N.D. Cal., Oct. 11, 2016, No. 16-CV-00412-WHO).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1   had pre-sale knowledge of the defect. *FAC,* ¶¶ 32-35, 51, 56, 82. *See, e.g., Asghari v. Volkswagen*

2   *Group of America, Inc.,* 42 F.Supp.3d 1306, 1330–31 (C.D. Cal. 2013) (finding allegations of

3   engine's inability to utilize oil properly, which could cause engine failure, adequately alleged a

4   safety defect).

5      Finally, Whirlpool's overall reliance on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th

6   Cir. 2012) is unavailing. *Motion* at 10-12.  (**"Plaintiffs have not alleged a sufficient nexus between**

7   the alleged design defect and the alleged safety hazard." *Wilson*, *supra*, 668 F.3d 1136, 1144.)

8   *Wilson* does not hold as a matter of law that consumer complaints or a defendant's superior

9   knowledge about a product cannot constitute notice of a defect.  Quite the opposite, *Wilson* cites

10  multiple cases on each issue that these factors ***can*** establish notice. The Ninth Circuit recognized the

11  critical distinction between the *Wilson* plaintiffs' generalized allegations versus those in *Falk, supra*.

12  Distinguishing *Falk*, the Ninth Circuit wrote: "The *Falk* court, however, considered 'the amassed

13  weight of [customer] complaints' together with other indications that GM had knowledge of the

14  defect." *Wilson, supra.* at 1147 (brackets in original); *see also*, *Falk, supra*, at 1096-97. Here,

15  Plaintiffs' allegations closely resemble those in *Falk*. Plaintiffs have alleged Defendant knew of the

16  defect from numerous sources including consumer complaints to dealers, Internet sources, orders for

17  broken parts and other internal sources of aggregate information about the problem. *FAC,* ¶¶ 32-35,

18  51, 56, 82.  Whirlpool's redesign of the replacement rack assembly also provides a powerful

19  inference of Defendant's knowledge of the defect. *FAC,* ¶ 39. Moreover, as to Whirlpool taking

20  issue with Plaintiffs' reliance on consumer complaints, (*Motion* at 11-12), "[s]uch contentions are

21  better raised on summary judgment." *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784,

22  *6 (C.D. Cal. 2009). Thus, the ramifications of the safety hazard posed by the defect "is a factual

23  dispute which is not appropriately resolved on a motion to dismiss." *Avedisian*, 2013 WL 2285237,

24  at *6.

25     **b.**  **Plaintiffs Need Not Allege That They Suffered a Personal Injury.**

26     Whirlpool contends that Plaintiff Bodley's UCL and CLRA claims must fail because neither

27  he nor consumers who submitted online complaints prior to his dishwasher purchase actually

28  suffered a personal injury. *See* Motion at 13. However, plaintiff need not plead that he or anyone

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

10          Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1  else has actually been injured in order to state a claim under the CLRA or UCL. *See e.g.*, *Daugherty*

2  *v. American Honda Motor Co.*, Inc., 144 Cal.App.4th 824, 836 (2006)  (duty to disclose based on

3  omissions may arise  if plaintiff alleges "physical injury *or any safety concerns* posed by the

4  defect") (emphasis added); *Parenteau v. Gen. Motors*, LLC, 2015 WL 1020499, *5 (C.D. Cal., Mar.

5  5, 2015) ("[T]he case law does not require anyone to have actually been injured before an omission

6  regarding an alleged safety defect can be held material and actionable."); *Herremans v. BMW of*

7  *North America, LLC*, 2014 WL 5017843, at*14 (C.D. Cal., Oct. 3, 2014) ("Where plaintiffs are able

8  adequately to allege an unreasonable risk to safety—i.e., a risk of physical injury—as the result of

9  an automotive defect, however, the court agrees with the *Ehrlich* court that they need not plead that

10  they or another class member have suffered such injury to state a viable CLRA or UCL claim.").[5]

11      Further, Plaintiff Bodley has plausibly alleged that: (1) Whirlpool had knowledge of the

12  alleged defect in the upper rack assembly at the time he purchased his dishwasher; (2) the defect

13  poses an unreasonable safety hazard; and (3) Whirlpool actively concealed the defect. These

14  allegations are sufficient, and the motion to dismiss the UCL and CLRA claims should be denied.[6]

### C.   Whirlpool's Warranty Limitations Are Unenforceable

16      A contractual provision is unconscionable if it is "procedurally" and "substantively"

17  unconscionable.  *Kilgore v. KeyBank, Nat. Ass'n*, 673 F. 3d 947, 963 (9th Cir. 2012), citing

18  *Armendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 99 (2010).

19      Procedural unconscionability exists where the contract is "oppressive." Adhesion contracts,

20  such as the Warranty, are generally treated as oppressive: "California law treats contracts of

21  adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to

22  negotiate, as procedurally unconscionable to at least some degree."  *Bridge Fund Capital Corp. v.*

23  *Fastbucks Franchise Corp.*, 622 F. 3d 996, 1004 (9th Cir. 2010); *Zaborowski v. MHN Government*

---

25  [5] In Plaintiff Matson's case, although she was not injured, the collapsing rack sent broken glass flying across her kitchen. *FAC,* ¶ 91.

26  [6]If the Court finds that Plaintiffs' allegations regarding presale knowledge are insufficient, then leave to amend is requested. Since the filing of the FAC, Plaintiffs have discovered additional consumer complaints regarding the KitchenAid dishwashers which pre-date Plaintiff Bodley's purchase.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

11                                           Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    *Services, Inc.*, 936 F. Supp. 2d 1145, 1151 (N.D. Cal. 2013) ("[T]he Agreement is a contract of

2    adhesion because it is 'a standardized contract, which, imposed and drafted by the party of superior

3    bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract

4    or reject it.'"  *Id.* at 1151-52, quoting *Armendariz*, 24 Cal.4th at 113.

5         The Warranty is a standardized contract. Plaintiffs allege: "The Warranty Exclusions were

6    not bargained for by Whirlpool and its customers but were imposed unilaterally by Whirlpool."

7    *FAC,* ¶ 61. Procedural unconscionability is adequately pled.

8         **D.    Plaintiff Bodley Has Adequately Plead Fraudulent Concealment**

9         Applying the proper standard to the FAC, Defendant's arguments that Plaintiffs' claims do

10   not comply with Rule 9(b) are unpersuasive. Defendant argues that their allegations "merely parrot

11   the elements of a fraudulent concealment claim and that plaintiffs allege no 'facts' that provide

12   Whirlpool with adequate Rule 9(b) notice." *Motion* at 18. On the contrary, Plaintiffs' allegations

13   that Whirlpool had notice of the dangerous upper rack defect are well supported by factual

14   allegations that comply with Rule 9(b), putting Defendant on clear notice of Plaintiffs' claims. *See*,

15   *FAC,* ¶¶ 32-35, 51, 56, 82.   As discussed in Section (B)(2) above, Plaintiffs' have sufficiently

16   alleged Whirlpool had pre-sale knowledge of the defect in the upper rack assembly.

17        "[C]laims based on an omission 'can succeed without the same level of specificity required

18   by a normal fraud claim'…because a plaintiff alleging an omission-based fraud will 'not be able to

19   specify the time, place, and specific content of an omission as would a plaintiff in a false

20   representation claim.'" *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014)

21   (internal citations omitted). Plaintiff Bodley has "adequately allege[d] the 'who what when and

22   how,' given the inherent limitations of an omission claim." *Id.*  The "who" is Whirlpool, the "what"

23   is its knowledge of the defect in upper rack assembly, the "when" is prior to the sale of the

24   dishwashers to Plaintiff Bodley and the Class, and the "how" is through the various retailers,

25   distributors and builders through which Whirlpool sells its products and its knowledge of the

26   volume of replacement parts sold. *Id.*; se*e also, Velasco v. Chrysler Group LLC*, 2014 WL 4187796,

27   *5 (C.D. Cal., Aug. 22, 2014) (applying same analysis). Accordingly, Plaintiffs' claims comply with

28   Rule 9(b).

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

12                                              Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1.      **The Statements Challenged by Whirlpool are not Puffery.**

The Ninth Circuit has provided clear guidance as to when CLRA and UCL claims must be dismissed because they are founded on "puffery." Whirlpool's statements must be measured by their effect on a "reasonable consumer." "Under the reasonable consumer standard, [plaintiffs] must "show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Products Co.*, *supra*, 552 F.3d at 938.

The challenged statements cannot be examined in isolation but must be evaluated in their context, including whether it is possible to make non-misleading statements concerning the same subject. Thus, the Ninth Circuit has held that while the claim that a drink is "nutritious" might, standing alone, be considered puffery, the statement must be addressed in light of other statements made by the manufacturer:

> This statement certainly contributes, however, to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery. "It is not difficult to choose statements, designs, and devices which will not deceive."

*Id.* at 939 n. 3 (quoting *United States v. Ninety–Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924).

This Court has reaffirmed the principles stated in *Williams. See, e.g., Rahman v. Mott's LLP*, 2014 WL 325241, at *7 (N.D. Cal., Jan. 29, 2014); *Jou v. Kimberly-Clark Corporation*, 2013 WL 6491158, at *5-*10 (N.D. Cal. Dec. 10, 2013).

Whirlpool asserts that Plaintiffs' claim that it "falsely represented that the dishwashers were manufactured with the highest quality standards, was reliable, and came with outstanding warranties" was "mere puffery." Whirlpool's objections are belied by the true facts - facts which are not vague.

Whirlpool represented the dishwashers were of "premium" quality. The KitchenAid dishwasher purchased was more expensive than other dishwasher models offered by and sold by Whirlpool. *FAC,* ¶ 146.  Plaintiff Bodley paid the highest price for the "premium" product because Whirlpool represented that the product was manufactured "with the highest quality standards and came with outstanding warranties." *FAC,* ¶¶ 49, 68, 77, 142. The true facts were that the dishwasher

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

13                                        Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    was not manufactured to the "highest quality standards" because of the obvious, serious and

2    dangerous defect in the upper rack assembly which Whirlpool concealed.

3          Furthermore, the notion that the dishwasher "comes with outstanding warranties," is belied

4    by Whirlpool's response to claims. First, it promises to "pay to correct defects in materials," then it

5    refuses to do so claiming that the warranty does not include defective materials stemming from a

6    *negligent selection of material*.

7          Moreover, while the express warranty specifically states coverage is five years for the "nylon

8    dish rack," when the dish racks fail, Whirlpool disingenuously asserts that the upper rack is a

9    separate part from the wheels that guide the rack and are excluded from the warranty. Consumers

10   reasonably expected that where the warranty expressly extends to the nylon dish racks, it covers the

11   wheel assembly.  Instead of the warranty meaning exactly what is stated --Whirlpool proposes self-

12   serving and deceptive alternative views to evade liability. Such manipulative representations

13   facilitated a deceitful strategy to avoid liability and constitute false statements regarding material

14   facts about the warranty, and an unfair business practice.

15         These statements are not "puffery."  Statements made by Whirlpool regarding the quality

16   and reliability of the dishwashers are objective and relate to the essential utility of the dishwashers.

17   These statements are material in that they provide the economic justification for spending more on a

18   premium KitchenAid dishwasher instead of a cheaper alternative brand dishwasher.  Plaintiff

19   Bodley alleges specifically that he wanted a top of the line dishwasher and paid a premium price to

20   have the KitchenAid dishwasher installed compared to a cheaper alternative brand. *FAC*, ¶ 85.

21   Whirlpool's omissions in not disclosing the defect and the corresponding reduction in the

22   dishwasher's capacity are (1) contrary to the representations made by Whirlpool, (2) within

23   Whirlpool's exclusive knowledge, (3) unknown to Plaintiffs and the Class, and (4) were actively

24   concealed by Whirlpool. They are therefore actionable under *Daugherty. See also*, *Limandri v.*

25   *Judkins*, 52 Cal. App. 4th 326, 336 (1997).

26              **2.      Plaintiffs Have Adequately Alleged Active Concealment.**

27         In addition to alleging Defendant had superior or exclusive knowledge of the defect,

28   Plaintiffs also allege that Defendant actively concealed the defects from the class. *FAC*, ¶¶ 36-39,

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

142-146. Courts routinely find such allegations of active concealment to be sufficient to establish a defendant's duty to disclose. *See, e.g. Marsikian, supra*, 2009 WL 8379784 (allegations that automaker knew about the defect and failed to disclose the full nature of the problem to the general public reflected active concealment); *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (allegations that manufacturer denied existence of defect adequate to demonstrate active concealment); *Ehrlich*, 801 F. Supp 2d 919 (citing *Falk*, 496 F. Supp. 2d at 1097) (plaintiffs adequately pleaded active concealment where biology manufacturer did not notify consumers of defect after getting complaints and then replaced defective parts with other defective parts to provide a temporary fix).

That said, the FAC alleges more than mere non-disclosure of the defect. Plaintiff alleges that that not only does Defendant refuse to replace the defective and dangerous upper rack, they have engaged in a concerted and active policy not to disclose the dangerous risk that the defect presents to consumers. *FAC*, ¶¶ 39, 143-146.  Plaintiffs further allege that despite corroborating knowledge acquired from consumer complaints and dealership records, not to mention its own internal warranty records, Defendant has not recalled the dishwashers to repair the defect, not issued a warranty extension, not offered a suitable repair free of charge, and not offered to reimburse class dishwasher owners for out of pocket cost. *FAC,* ¶¶ 8, 30.

### 3.    Plaintiffs Allege Indirect Reliance Sufficiently.

Consumers may rely on false statements made to persons who advise them concerning the purchase of products. This type of reliance – often described as "indirect reliance" – is sufficient to support a claim for common law fraud. Contrary to Defendant's assertions, Plaintiffs are not required to plead that the misrepresentations or omissions made to the adviser were repeated to Plaintiffs. *E.g.*, *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996):

> California courts recognize indirect reliance. (*Geernaert v. Mitchell* (1995) 31 Cal.App.4th 601, 605-606 [37 Cal.Rptr.2d 483].) Moreover, the notion that reliance by an agent may be imputed to the principal, even though the misrepresentation was never communicated to the principal, is ensconced in California law. (See, e.g., *Grinnell v. Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 441 [79 Cal.Rptr. 369]; *Toole v. Richardson–Merrell Inc.* (1967) 251 Cal.App.2d 689, 707 [60 Cal.Rptr. 398, 29 A.L.R. 3d 988].)

*Id.* at 1568.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

15                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

The *Grinnell* and *Toole* cases cited by the court in *Thrifty-Tel* are instructive. In both cases, patients sued drug manufacturers for breaches of warranties which the patients themselves had neither read nor heard. Both courts held reliance on the warranties by the physicians who administered the drugs was sufficient even though not repeated by them to their patients.

In the present case, Plaintiffs have alleged that Defendant maintained a network of "Advisors" whom Defendant publicly held out as their "partners" and to whom Defendant provided written marketing materials regarding product information for the express purpose that these "partners" would convey it to consumers, which they did.  See *FAC,* ¶¶ 67-73.

### E.  Plaintiffs State a Cause of Action for Breach of Express Warranty

When consumers buy Whirlpool's "premium" dishwasher, as a "major appliance" the "outstanding warranty" says that "defects in material" in the "nylon dish racks" are covered. *FAC*, ¶¶ 42, 49, 68, 77, 142 and Exhibit B. As set forth hereinafter, the standard for evaluating the warranty language is what the ordinary consumer would understand it to mean.  Under that standard, the warranty language means that if the material in the rack fails, then it is covered. Defendant leads consumers to believe they are covered and then when a problem arises their promise of coverage is repudiated. As set forth hereinafter, this is a contract of adhesion. According to the standards in the Song-Beverly Act and Magnuson-Moss Warranty Act, general contract interpretation provisions of the Civil Code as well as the law of contracts of adhesion, this warranty language - *which Defendant drafted* - should be construed against it. For the dishwasher consumer, "we pay to correct defects in materials" cannot mean "we don't pay for defects in materials" when the loaded dish rack collapses.

This "design defects" exclusion, while never disclosed to their customers, is fully comprehensible to Whirlpool for when consumers ask Whirlpool to pay to replace the defective material, those requests are summarily rejected – a clever strategy unfairly enforced.

### 1.  The Defect Is Covered By the Express Warranty.

#### a.  Defendant was required by law to use "readily understood" language to exclude warranty coverage.

Both California law and Federal law require that warranties be written in language ordinary consumers can readily understand.  The Song-Beverly Act requires that express warranties be set

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

16                                              Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

forth "in simple and readily understood language" and "shall conform to the federal standards for disclosure of warranty terms and conditions" set forth in the Magnuson-Moss Warranty Act ("MMWA") and federal regulations.  Civil Code §1793.1(a).  Under the MMWA, a written warranty shall "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty."  15 U.S.C. § 2302(a).  Such full and conspicuous disclosure "may require inclusion in the written warranty of [e]xceptions and exclusions from the terms of the warranty." 15 U.S.C. § 2302(a)(5)   The warrantor "shall clearly and conspicuously disclose in a single document in simple and readily understood language, the following items of information:...(2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by *and where necessary for clarification, excluded from the warranty*."  16 CFR Section 701.3 (emphasis added).

### b.  Contracts of Adhesion should be construed against the drafter.

Defendant's attempt to exclude coverage is also limited by traditional rules of contract interpretation.  The KitchenAid dishwasher warranty is a contract of adhesion. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Cos*.,188 Cal.App.2d 690, 694 (1961).  Any ambiguity "within a contract of adhesion, must be resolved against the draftsman."  *Daniel v. Ford Motor Co.*, *supra*, 806 F.3d at 1225.  The general rule is that "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Civil Code § 1654.  The foregoing rule applies even without a contract of adhesion.  But when there is a contract of adhesion, the rule "applies with peculiar force" in contracts of adhesion.  *Daniel*, *supra*, 806 F.3d at 1224.

### c.  Words are to be interpreted in their ordinary sense, not according to strict legal meaning.

"The words of a contract are to be understood in their ordinary and popular sense, *rather than according to their strict legal meaning*" unless a technical or special meaning was intended by the parties. Civil Code §1644 [emphasis added].  "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, [the Court] appl[ies] that meaning." *Santisas v Goodin* (1998)

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

17 Cal.4th 599, 608 (brackets added).  Even where a technical definition exists, that does not mean it should be adopted versus a layperson.  If industry interpretations were allowed to be the last word in contract interpretation versus a layperson, this would contravene the plain meaning rule found in Civil Code §1644.  *American Star Insurance Co. v. Insurance Co of the West*, 232 Cal.App.3d 1320, 1330-1331 (1991).

Whirlpool's construction of the warranty meaning is unforeseen and unreasonable. The warranty says that as to the racks it includes coverage for 5 years for "we pay for factory specified parts and repair labor for *defects in materials* or workmanship." *FAC,* ¶ 41 and Exhibit B (emphasis added).  Applying a reasonable lay construction, this language means that if the material in the product failed, then that failure would be covered by the warranty.  There is nothing in the language to suggest that if an unsuitable material was negligently selected, then that very failure caused by Whirlpool's malfeasance would be excluded from warranty coverage, absolving Whirlpool of responsibility.

### d.    The Warranty does not say what Defendant claims it means.

The warranty never mentions, much less excludes, "design defects." Defendant now argues that "defects in materials" means exclusively "manufacturing" defects in material. *Motion* at 19-21. Yet, nowhere is the phrase "manufacturing defects" used in the warranty. Nor does the warranty say that the selection of unsuitable material is excluded. The burden is on Defendant to make it clear to ordinary consumers in readily understood language what was included and excluded. It failed to do so. The language is ambiguous to ordinary consumers. It must be construed against Defendant, who drafted it and who has statutory obligations to make clear what is and is not covered.

Defendant contends that "defects in materials and workmanship" means design defects are excluded and cites several cases. *Motion* at 19-21. Some of Defendant's cited cases will be addressed hereafter, but they are really beside the point and a diversion.  By law, words are to be construed according to their ordinary meaning, not their technical or strict legal meaning, particularly with lay people.  Ordinary consumers do not read legal opinions and cannot be expected to engage in legal analysis of words that otherwise have clear meaning like "we pay…to correct defects in materials."  Even "thoughtful" judges have "wrestled" with the meaning of "design

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

18                                      Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1   defects" versus "manufacturing defects." *Barker v. Lull Engineering Company, Inc.*, 20 Cal.3d 413,

2   429 (1978); the ordinary consumer stands no chance of discerning the hidden and technical meaning

3   proffered by Whirlpool.  Defendant could have clearly communicated in readily understood

4   language its intention to exclude coverage, for choosing unsuitable materials constitutes a "design

5   defect," a proverbial "Catch 22." It did not do so.

**e.      The cited authorities do not constrain the Court.**

7   Defendant suggests the issue has already been disposed of in the *Burch* case cited by

8   Defendant.  However, the plaintiff in *Burch* never made the argument that Plaintiffs are making

9   here.  Indeed, so far as Plaintiffs' counsel has ascertained, this argument also was not made in any of

10  the design v. manufacturing cases cited by Defendant or in any case that Plaintiffs' counsel has

11  reviewed.  Cases are not authority for propositions not considered. *In re Marriage of Cornejo*, 13

12  Cal.4th 381, 388 (1996).  To the extent this argument was not addressed in any authority cited by

13  Defendant, then those authorities do not constrain this Court in deciding this issue.

14  Specifically, Plaintiffs allege that Defendant did not state the design defect exclusion in

15  language readily understood by consumers. *FAC,* ¶¶57-66. Plaintiffs allege that consumers do not

16  understand warranty language that provides coverage for "defects in materials" to mean that the

17  warranty does not provide coverage for Whirlpool's selection of unsuitable materials. *FAC,* ¶63.  An

18  ordinary consumer would reasonably understand language to mean the exact opposite of what

19  Defendant contends here.  At the very least, Plaintiffs are entitled to the opportunity to prove the

20  layperson's interpretation of the language.  As written by Whirlpool, the warranty language to the

21  consumer is not only ambiguous, but unintelligible.

**f.      Ambiguity in warranty terms should be decided by a jury.**

23  "The meaning of ambiguous or uncertain contract terms should be determined by a jury

24  based on 'credible evidence concerning the parties' intentions,' not by a judge a matter of law."

25  *Musgrave v. ICC/Marie Callendar's Gourmet Products Division*, 2015 WL 510919, at *11 (N.D.

26  Cal. Feb. 5, 2015).  "If the terms of the contract are ambiguous or uncertain…determining the

27  contract's terms is a question of fact for the trier of fact…" *Cotran v. Rollins Hudig Hall Intern.,*

28  *Inc.*, 17 Cal.4th 93, 112 (1998).

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

19                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

**g.    No public policy is served by allowing purveyors of defective products to escape responsibility based upon an arcane and artificial distinction.**

The distinction between design defects and manufacturing defects did not originate in warranty law (contract). Nearly all of the design v. manufacturing defect cases cited by Defendant can be traced back, directly or indirectly, to the products liability personal injury case of *Barker, supra,* 20 Cal.3d at 413.[7]  *Barker* drew a distinction between design and manufacturing defects for policy reasons related to jury instructions to allocate liability among defendants for injury caused by a defective product.  The holding in *Barker* was not to absolve manufacturers for "design defects."

> In general, a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. …. A design defect, by contrast, cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design.

*Id*. at p. 429.

Initially, this distinction remained largely confined to the products liability arena, and more recently emerged in the warranty arena without any real analysis of the underlying policy reasons for the distinction.  *None* of the cases cited by Defendant, nor any case Plaintiffs reviewed, on this issue analyze *why* this distinction between design and manufacturing defects should be extended to the warranty arena against unsuspecting consumers.  In contrast to the products liability arena where the design versus manufacturing defect analysis was used to allocate liability between defendants, in the warranty arena, this hidden distinction serves no purpose other than to mislead consumers and exonerate manufacturer for its negligence.

**h.    Defendant's Cases are Thinly Supported.**

Based upon the foregoing, the Court need not even reach an analysis of Defendant's design v. manufacturing defect cases.  However, if the Court does consider these cases, the Court will find

---

[7] One exception is the case of *Lombard Corporation v. Quality Aluminum Products Co.*, 261 F.2d. 336 (6th Cir. 1958).  However, the *Lombard* case involved sophisticated corporate parties on both sides of a commercial transaction and the warranties were *truly* negotiated. Thus, it did not involve the same policy considerations as this consumer warranty case.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

20                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1   them unreliable.  Defendant leads on page 19 of its brief with the increasingly cited but weakly

2   supported case of *Troup v. Toyota Motor Corp.*, 545 F.App'x 668 (9th Cir. 2013).  *Troup* contains

3   no independent analysis of the issue at hand but rather simply cites two cases for the assertion that

4   the warranty language in question per se excludes design defects.  Neither case cited by *Troup* deals

5   with the issue for which *Troup* cites it as support.  For this reason, *Troup* and every subsequent case

6   that cites it as authority for this proposition -  is flawed.

7           *Troup* cites *Daugherty*.  Although *Daugherty* is a warranty case, the issue in that case did not

8   involve coverage of a manufacturing defect versus a design defect.  Rather the issue in *Daugherty*

9   was the *duration* of the warranty.  *Troup* also cites *McCabe v. American Honda Motor Co.*, 100

10  Cal.App.4th 1111 (2002).  *McCabe* was a products liability case, which relied on *Barker*.   Although

11  both types of defects were preliminarily mentioned as *dicta*, the case did not involve a

12  manufacturing versus design defect issue, and it certainly did not analyze the warranty language

13  involved in the present case.  Rather, in *McCabe* it was undisputed that the defect, if any, was a

14  design defect and the question considered was whether "the court erred in holding the consumer

15  expectation test [one of two design defect tests] is inapplicable as a matter of law." *Id.* at 1116.

16  Although it has been extensively cited in warranty cases to support the proposition that "defects in

17  materials and workmanship" *per se* excludes design defects, the fact is that *McCabe* did not address

18  that question.[8]

19          In contrast, the cases of *In Re Saturn L-Series Timing Chain Product Liability*, 2008 WL

20  4866604, (U.S. Dist. Neb. 2008) and *Koulajian v. Trek Bicycle Corp.*, 1992 WL 28884 (S.D. NY

21  1992) which have come to the opposite conclusion, *actually contain analysis*.[9]  The *Saturn* case

23  [8] All of the other cases cited by Defendant lack any substantive analysis and are based upon
24  authority that, when traced back to its origins, does not support Defendant's proposition.  The
    *Saturn* case relies on *McCabe*. Motion at 20. *Davidson* merely cites *Troup*. *Id. Robinson*, without
25  analysis, relies on *Troup*, *Bruce Martin*, *Voelker* (these latter two are discussed hereafter) and one
    other case that in turn merely cites *Troup*. *Id. at* 20-21. *Coba* contains no original analysis;
26  presumably it is included by Defendant for its "joining the majority of cases" language not
    supported by any meaningful analysis.  *Id.* at 21.
27  [9] Some courts have declined to follow these cases based not on substantive analysis but on the
    relative age of the cases (2008 and 1992).  Indeed, *Bruce Martin* court had no reservation about
28  relying *solely* on a 1958 case, and that has not stopped other cases or Defendant from citing *Bruce*
    (footnote continued)

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

21                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1  states that "design is integrated into each step of the manufacturing process and affects both

2  materials and workmanship" and that "it would be absurd to interpret a car company's written

3  warranty as *not* covering any defect in 'materials and workmanship' if the defect could

4  simultaneously be attributable to a design implemented by the company in the manufacturing of the

5  car." *Saturn,* supra, 2008 WL 4866604 at *45 (emphasis in original).   *An interpretation of a*

6  *warranty that allowed a warrantor to escape responsibility based on the fact that the warrantor*

7  *itself had defectively designed the product  "would defy logic." Id.* (citing *Koulajian*).

### 2.       Plaintiffs Have Stated an Express-Warranty Claim under the Song-Berly Act.

10       Defendant does not assert any independent argument for why Plaintiffs allegedly have failed

11  to state a claim under Song-Beverly. Rather, Defendant simply argues that the defect is not covered

12  under the express warranty. For the reasons set forth above, that argument fails.

### 3.       Plaintiffs Have Stated an Express-Warranty Claim under the MMWA.

14       Defendant does not assert any independent argument for why Plaintiffs allegedly have failed

15  to state a claim under Magnuson Moss.  Rather, Defendant simply argues that the defect is not

16  covered under the express warranty. For the reasons set forth above, that argument fails.

### F.       Plaintiffs Have Adequately Alleged Breach of Implied Warranty

### 1.       Plaintiffs' Implied Warranty Claims Are Not Time-Barred.

19       The statute of limitations for an implied warranty claim under Song-Beverly is governed by

20  Commercial Code § 2725(1) which requires that an action be brought within four years of accrual.

21  Under Commercial Code §2725(2), "where a warranty explicitly extends to future performance of

22  the goods" a cause of action for breach of warranty accrues on discovery of the facts underlying the

23  breach.  Under Song-Beverly, the implied warranty of merchantability extends to future

24  performance because Song-Beverly provides "an express provision for a duration of the implied

25  warranty of merchantability."  *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1304-1306

26  (2009).  "In contrast to the California Uniform Commercial Code, the Song-Beverly Act 'contains

27  _____

28  *Martin.*  The age of a case is not a sufficient reason for rejecting a case that is sound in its reasoning.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1   no "reasonable time" requirement by which the consumer must invoke the [Song-Beverly] Act or

2   lose rights granted by that statutory scheme.'" *Id*. at p. 1307 (citations omitted). While some federal

3   courts have expressed disfavor for *Mexia*, the Ninth Circuit has held that on matters of state law,

4   federal courts are required to follow state decisions, not federal decisions.  *Daniel v. Ford Motor*

5   *Company* (2015) 806 F.3d 1217, 1223.   "We must follow the decision of the intermediate appellate

6   courts of the state unless there is convincing evidence that the highest court of the state would

7   decide differently…Here, there is not convincing evidence that the California Supreme Court would

8   decide the latent defect discovery issue that was presented in *Mexia* differently." *Id* (internal

9   citations and punctuation omitted).

10         Defendant argues that Plaintiffs' implied warranty claim is time-barred because the future

11   performance exception found in Commercial Code § 2725(2) allegedly does not extend to implied

12   warranty, citing out of context the case of *MacDonald v. Ford Motor Co.*, *supra* at 1100 (N.D. Cal.

13   2014).  Defendant cites language in which the *MacDonald* court notes that the warranty there was

14   not one that "explicitly extends to future performance," but that observation is preceded by the

15   phrase: "Here, Plaintiffs bring only an implied warranty claim…"  There was no express warranty at

16   issue in the *MacDonald* case.

17         The underlying case cited, *Cardinal Health v. Tyco Electronics Corp*., 169 Cal.App.4th 116

18   (2008), does not hold that there can be no future performance exception for an implied warranty.

19   Rather, *Cardinal* holds that for there to be a future performance exception, the time for performance

20   must be "explicitly" extended to a "defined period of time" or "a specific period of time."   The

21   factual distinction is that in *Cardinal*, the warranty guaranteed performance of the machine for

22   "50,000 cycles" rather than a specific period of time**.**  In contrast, in our present case, there is an

23   explicit, specific period of time of future performance: ***Whirlpool guaranteed the performance of***

24   ***the racks for five years.***

25         Accordingly, an implied warranty claim under Song-Beverly based on a latent defect does

26   not accrue until plaintiff discovers (or reasonably should have discovered) the facts giving rise to the

27   claim. *E.g*., *Ehrlich*, *supra*, 801 F. Supp. 2d at 925 (citing *Mexia*, where plaintiff purchased vehicle

28   in 2004, action brought in 2010 is timely where plaintiff did not discover facts constituting breach

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1   until 2008); *Keegan v. American Honda Motor Company*, Inc., 284 F.R.D. 504, 527 (C.D. Cal.

2   2012); *Falco v. Nissan North America Inc.*, 2013 WL 5575065 (C.D. Cal. October 10, 2013) at *10.

3   Plaintiffs Bodley and Matson have alleged that they were not aware of the defects until the failures

4   occurred on April 2017 and June or July 2016, respectively. *FAC*, ¶¶ 28, 84, 86, 90, 91. Their claims

5   are not time-barred because this lawsuit was brought within four years of failure.

6            **2.**      **Plaintiffs' Implied Warranty Claims Do Not Fail for Lack of Privity.**

7         Defendant argues that Plaintiffs' implied warranty claims fail for lack of privity. However,

8   vertical privity is not required by the plain language of the Song-Beverly Act (Civil Code §1792)

9   (Retail sales "shall be accompanied by the manufacturer's and the retail seller's implied warranty

10   that the goods are merchantable.") *See*, *Ehrlich*, *supra*, at 908.  To the extent vertical privity is

11   satisfied by Song-Beverly, it is also satisfied for Magnuson-Moss.  *Daniel*, *supra*, 806 F.3d at 1227.

12   In paragraph 191 of the FAC, Plaintiffs' allegations have satisfied the vertical privity for its implied

13   warranty claim based upon the intended beneficiary theory.  These allegations are supported by

14   California law in *Gilbert Financial Corp. v. Steelform Contracting Co*., 82 Cal.App.3d 65 (1978).[10]

15            **3.**      **Matson's Implied Warranty Claim Does Not Fail.**

16         Defendant cites no authority for its contention that Plaintiff Matson's implied warranty claim

17   fails because she moved into her home more than a year after the dishwasher had been purchased.

18   This seems to be merely a variation of the arguments that the claim is time-barred or that Plaintiff

19   Matson lacks privity. Plaintiff Matson addresses those arguments in Sections 1 and 2 above.

20            **4.**      **Plaintiffs Adequately Alleged that the Dishwashers Were**
                    **Unfit for their Ordinary Purpose.**

21

22         Defendant argues that Plaintiffs have failed to allege that the dishwashers were unfit for their

23   ordinary use.  This is simply untrue.  Plaintiffs have alleged that the dishwashers were unfit and/or

24   inoperable at paragraphs 25, 33, 50, 92, and 187 of the FAC.  Defendant's supposed "common

25   _____

26   [10] *Gilbert* has been relied upon in numerous federal cases. *Michael v. Honest Company, Inc.*, 2016 WL 8902574, at *25 (C.D. Cal., Dec. 6, 2016) ; *Roberts v. Electrolux Home Products, Inc.*, 2013

27   WL 7753579, at *9 (C.D. Cal. Mar. 4, 2013); *In re Toyota Motor Corp. supra*, 754 F.Supp.2d at 1184-85; *Keegan*, supra, 838 F.Supp.2d at 947; *Cartwright v. Viking Industries, Inc*., 249 F.R.D.

28   351, 356 (E.D. Cal. 2008); *In re Toyota*, 754 F.Supp.2d at 1184.

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

24                        Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)

1    sense" supposition that Plaintiffs continued to use 50% of the dishwashers' capacity is unsupported

2    conjecture and irrelevant.

3          It is not the case that because a consumer can limp along with a defective product that the

4    consumer therefore has no cause of action for breach of implied warranty.  In the case of *Isip v.*

5    *Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 27 (2007), the court rejected the notion "that merely

6    because a vehicle provides transportation from point A to point B, it necessarily does not violate the

7    implied warranty of merchantability."

8          "[A] court should not seek to reduce a product to its most basic, bare minimum purpose, but

9    rather should take a commonsense view informed by reasonable consumers' expectations about the

10   function of the type of product in a general sense." *Digby Adler Group, LLC v. Mercedes-Benz*

11   *U.S.A., LLC*, 2015 WL 5138080, at *5 (N.D. Cal., Sept. 1, 2015).  In *Digby*, a malfunction in the air

12   conditioner in a new van essentially caused it to rain on its occupants during operation.  In response

13   to the defense contention that the van was still fit for its intended purpose of transportation, the

14   *Digby* court stated, "[I]t seems inconceivable to this Court that it would be in keeping with ordinary

15   consumer expectations that a new cargo van should regularly drench its occupants and their

16   property, resulting in repeated damage and requiring extended periods of disuse." *Id.* at *6.

17   **V.      CONCLUSION**

18         For the foregoing reasons, Defendant's Motion should be denied in its entirety. If the Court

19   finds that any claim is pled insufficiently, Plaintiffs seek permission to amend.

20

21   Dated:   January 12, 2018                    Respectfully submitted,

22                                               BIRKA-WHITE LAW OFFICES

23

24                                               By:

25                                                    DAVID M. BIRKA-WHITE
                                                     Attorneys for Plaintiffs
26                                                   James Bodley and Kyle Matson

27

28

Birka-White Law Offices
178 E. Prospect Ave.
Danville, CA 94526
(925) 362-9999

25                                    Case No. 3:17-cv-05436-JST
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY OR TRANSFER OR,
ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)